IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| EFRAIN ALCARAZ (#N-41754), | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22 C 6702 |
| | ) | |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| EVERISTO AGUINALDO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Efrain Alcaraz, currently an inmate at Pinckneyville Correctional Center, brought this *pro se* civil rights lawsuit, 42 U.S.C. § 1983, stemming from the medical care he received from Defendants at Stateville Correctional Center after he believed an insect crawled in his ear in July of 2021. Plaintiff alleges that Doctor Aguinaldo and Nurse Practitioners Yenkong and Bruckner provided him with constitutionally inadequate health care for the issues he was having with his ear. Defendants Bruckner, Aguinaldo, and Yenkong move for summary judgment. For the reasons that follow, defendants' motions are granted.

**I.      Background**

   **A.      Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895,

899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Specifically, a district court is not required to "'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Id.* (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000)).

Defendants filed their statements of material facts, citing to the record in support of each statement as required under the local rules. (Dkt. 71, 76.) Because Plaintiff is proceeding *pro se*, Defendants served him with the required "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 68.)

Where Plaintiff has not properly responded to a certain fact or has admitted it, the Court will accept it as true to the extent supported by the record. *Lamz*, 321 F.3d at 683.

Plaintiff did not respond to Defendants' statements of fact in the form required by the local rules. But Plaintiff attached documents to his brief. (Dkt. 79). Although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the facts identified by Plaintiff to the extent they are supported by the record, or he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). The Court will not look beyond the cited material, however. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Additionally, Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendants' motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

**B.    Relevant Facts**

In July 2021, Efrain Alcaraz, was an inmate at Stateville Correctional Center. (Exhibit 1, p. 12). Plaintiff was housed in Stateville until approximately September

3

2022, when he moved to Pinckneyville Correctional Center. (Dkt. 76, Defs. Aguinaldo and Yenkong SOF ¶ 1). Defendant Everisto Aguinaldo, M.D., is a licensed medical doctor who was employed by Wexford Health Sources, Inc. (*Id.* at ¶ 2.) Aguinaldo retired in July 2023. (*Id.*). Defendant Richard Yenkong, APN, is a licensed advanced practice nurse employed by Wexford Health Sources, Inc. (*Id.* at ¶ 3.) Defendant Helen Bruckner, DNP, FNP-BC, is a licensed nurse practitioner employed by Wexford Health Sources, Inc. (Dkt. 71, Def, Bruckner SOF ¶ 2.)

On July 14, 2021, Alcaraz was ordered to move his cell to Gallery 9, cell number 954. (Dkt. 76, Defs. Aguinaldo and Yenkong SOF ¶ 5). He did not want to move to that cell because of its conditions. (*Id.* at ¶ 6.) Alcaraz requested a crisis team to come to help him, because he felt his health was at risk and he was seeking more help than what the sergeants and the correctional officer could give him. (*Id.* at ¶ 7.)

The next day on July 15, 2021, Alcaraz was given a disciplinary ticket for disobeying a direct order in refusing to move to Gallery 9. (*Id.* at ¶ 8.) That same day, Alcaraz again requested a crisis team, and when the crisis team came to check on him, he told the team that he was having panic attacks and that he was nervous because he was being ordered to move cells. (*Id.* at ¶ 9.) Alcaraz was then evaluated as a suicide risk, and as a result of that evaluation, he was placed on 10-minute suicide watch. (*Id.* at ¶ 10.)

After his release from suicide watch, Alcaraz was returned to segregation in X House. (*Id.* at ¶ 11.) He was eventually moved to Gallery 9 after being moved out of segregation around approximately July 24, 2021. (*Id.*)

4

In July 2021, if Alcaraz wanted to be seen by a healthcare provider at "sick call" he would register his name with the nurse that brings around medications in the morning. (*Id*. at ¶ 12.) Then Alcaraz would been seen by a nurse for an evaluation to determine if he should see a doctor. (*Id*.)

Around July 20, 2021, while still in segregation, Alcaraz complained to Sergeant Green that he needed to be seen by a doctor because he had been bitten by a spider and an insect went inside his right ear. (*Id*. at ¶ 13.) His symptoms related to his spider bite and insect in his ear began on or around July 18, 2021. (*Id*. at ¶ 14.) Alcaraz believes it was a bug in his ear because he felt something moving in his ear. (*Id*.)

Alcaraz saw Aguinaldo on July 22, 2021, and Aguinaldo examined him. (*Id*. at ¶ 15.) Alcaraz made complaints regarding his left nostril being clogged making it difficult to breathe, he wanted an increase in his nerve pain medication, a possible bug bite on his right leg, and a bug in his right ear. (*Id*. at ¶ 22.) Alcaraz reported that he was not experiencing any difficulty hearing. (*Id*.). Upon examination of his right ear, the only pertinent findings were a build-up of earwax. (*Id*.) As part of Aguinaldo's standard practice when examining a patient with ear complaints, he always uses an otoscope to visualize and assess the external auditory canal, tympanic membrane, and middle ear. (*Id*. at ¶ 44.) On July 22, 2021, there was no evidence of a bug inside Alcaraz's right ear. (*Id*. at ¶ 43.)

Aguinaldo ordered Debrox drops, which Alcaraz was instructed to administer three times a day for five (5) days. (*Id*. at ¶ 23.) Debrox is effective at removing excess

5

ear wax, dirt, or debris from the patient's ear. (*Id.*) Alcaraz was to follow up after completing the five-day course of drops to have his right ear flushed, which is a standard timeframe to allow the Debrox drops to loosen up any wax build up before having the ear flushed. (*Id.*). The nurses at Stateville were responsible for making sure that Alcaraz's ear flush was done. (*Id.* at ¶ 16.) Aguinaldo only treated Alcaraz for his right ear on July 22, 2021, and never provided any medical treatment to Alcaraz after that date. (*Id.* at ¶ 47.)

Alcaraz attempted to return to the health care unit for his ear flush treatment after his appointment with Aguinaldo by contacting the nurse to tell her that he needed to get his ear flushed, and was told by a nurse that she would review his medical records to see what the doctor wrote. (*Id.* at ¶ 17.) Alcaraz does not know if Aguinaldo was ever made aware that the ear flush was never done or that Alcaraz was still experiencing problems with his right ear. (*Id.*)

On July 29, 2021, Alcaraz was seen by Nurse Practitioner Bukola Odusote for a mental health evaluation. (*Id.* at ¶ 27.) Odusote did not document that Alcaraz was having any issues with his right ear. (*Id.*). Nor did she document that Alcaraz asked about seeing by a medical provider to have his right ear flushed out. (*Id.*).

On August 19, 2021, Alcaraz saw Yenkong. (*Id.* at ¶ 18.) Alcaraz complained of right inguinal hernia pain, pain with bowel movements, hard stool, and neuropathic pain in his upper back, cervical spine, and radiating to his right lower extremity and scrotum. (*Id.* at ¶ 28.) Yenkong examined Alcaraz's right ear and noted "R ear canal cerumen" which is the medical term used for earwax. (*Id.* at ¶ 29.)

6

Yenkong diagnosed Alcaraz with having impacted ear wax, which signifies that Alcaraz's right ear was either still clogged by ear wax since his previous visit, or Alcaraz had additional build-up of earwax. (*Id.*). As part of his standard practice when examining a patient, Yenkong would always use an otoscope to visualize and assess the external auditory canal, tympanic membrane, and middle ear. (*Id.* at ¶ 50.)

Yenkong told Alcaraz to continue using the Debrox ear drops as ordered by Aguinaldo on his prior visit. (*Id.* at ¶ 30.) Yenkong also prescribed for Alcaraz a flush of his right ear (*Id.*). Yenkong told Alcaraz that he could return to the clinic "PRN" or as needed. (*Id.*). Yenkong only saw Alcaraz one time on August 19, 2021. (*Id.* at ¶ 52.) After Alcaraz's visit with Yenkong on August 19, 2021, Alcaraz never attempted to contact Yenkong to let Yenkong know that the ear flush was never done. (*Id.*)

It was the custom and practice at Stateville in 2021, after a patient encounter, for the nurses to review the patient's chart and then ensure that the orders made by the medical provider were carried out. This process was followed with Alcaraz's records from July 22, 2021, and August 19, 2021, as evidenced by the "noted by…" designation on the bottom of the page. (*Id.* at ¶ 31.) The nurses at Stateville in 2021 had a list for patients that needed to have an ear flush performed. (*Id.* at ¶ 32.) The practice was for the nurse that reviewed Alcaraz's chart note from August 19, 2021, to add Alcaraz's name to the ear flush list to be done in the timeframe noted in the record. (*Id.*). It was then the nurses' responsibility to ensure that the patient returned to the healthcare unit for the ear flush procedure as ordered. (*Id.*) If Alcaraz was not informed of a follow-up visit within five days as ordered, the practice at Stateville

was for Alcaraz to follow the appropriate procedures for seeking medical attention at Stateville to have his ear flushed as planned after using the Debrox drops as ordered. (*Id.* at ¶ 46.)

On October 1, 2021, Alcaraz was seen by another Advanced Practice Registered Nurse in the health care unit. (*Id.* at ¶ 33.) No right-ear complaints or requests for an ear flush are in the medical notes from the visit. (*Id.*) On November 25, 2021, Alcaraz was seen in his cell by a nurse. (*Id.* at ¶ 34.) Alcaraz's subjective complaint was "The Neurontin is not working. It did work great but not anymore." (*Id.*). The nurse did not document that Alcaraz complained of any issues with his right ear.

On December 22, 2021, when Alcaraz was seen by Bruckner, he complained about his right ear, and Bruckner examined it. (*Id.* at ¶ 20.) Bruckner told Alcaraz that there was debris in his ear and ordered an ear flush. (*Id.*) When the nurse performed the ear flush during that same visit, nothing came out of Alcaraz's right ear. (*Id.*) Alcaraz's chart was updated with an addendum that "no foreign body was found in R ear s/p flush" and the assessment was changed to note that Alcaraz had ear wax instead of a foreign body. (*Id.* at ¶ 37.)

Alcaraz did not make any further complaints regarding his right ear until February 2022. (*Id.* at ¶ 38.) On February 11, 2022, Alcaraz was examined by a nurse at Stateville who documented that Alcaraz's right ear canal was red with drainage present. (*Id.* at ¶ 39.) A "finger rub" hearing test was performed on both ears and Alcaraz passed signifying Alcaraz was not experiencing any hearing loss. (*Id.*). The nurse examining Alcaraz also noted that his tympanic membrane was visualized and

8

that there was minimal ear wax present. (*Id.*). Both Bruckner on December 22, 2021, and the nurse on February 11, 2022, noted that Alcaraz's tympanic membrane ("ear drum") was fully intact, and that there was no foreign object or bug stuck inside Alcaraz's ear drum at either of those visits. (*Id.* at ¶ 40.)

On September 20, 2022, Alcaraz was transferred from Stateville to Pinckneyville Correctional Center. (*Id.* at ¶ 41.) The medical records do not show that Alcaraz complained about any issues with his right ear between February 11, 2022, and his transfer to Pinckneyville on September 20, 2022. (*Id.* at ¶ 42.)

Alcaraz claims that there was a delay in six months in receiving the ear flush that Aguinaldo originally ordered on July 22, 2021. (*Id.* at ¶ 54.) Once Alcaraz moved to Pinckneyville Correctional Center in September 2022 there was nothing more that Aguinaldo, Yenkong, or Bruckner could do to provide him with medical care. (*Id.* at ¶ 56.) In January 2023, Alcaraz had a hearing test done at Pinckneyville. (*Id.* at ¶ 57.) Alcaraz reported to the nurse at Pinckneyville that he was having hearing issues after a bug crawled into his ear eight months prior. (*Id.*) In June 2023, Alcaraz had another hearing evaluation done by an Audiologist. (*Id.* at ¶ 58.) The Audiologist performing the examination on Alcaraz in June 2023 noted inconsistencies in Alcaraz's responses and recommended that the test be repeated in 6 months. (*Id.*). Alcaraz does not require any hearing aids to assist him with hearing. (*Id.* at ¶ 59.)

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

9

P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The parties seeking summary judgment bear the initial burden of showing the grounds for their motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they have done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id*. However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only

10

speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## III. Analysis

Plaintiff alleges in his complaint (Dkt. 5), that he was subjected to unconstitutional conditions of confinement at Stateville (insect infestation) by Defendants Rainford and Ruiz, that led to an insect crawling in his ear, requiring medical care, and that the medical care provided by Defendants Aguinaldo, Yenkong, and Bruckner was constitutionally inadequate.* In their motion for summary judgment, Defendants Aguinaldo and Yenkong argue that Defendants are entitled to summary judgment on Plaintiff's deliberate indifference claim. Defendant Bruckner argues the same and also argues Plaintiff did not exhaust his administrative remedies prior to filing suit.

### A. Administrative Exhaustion

The Prison Litigation Reform Act requires an inmate who brings a civil rights complaint to first exhaust his available administrative remedies within the correctional system. 42 U.S.C. § 1997e(a); *see, e.g.*, *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). This requirement is mandatory; "a court may not excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 632, 639 (2016). To fulfill the exhaustion requirement, an inmate

---

* Defendant Rainford was granted an extension of time in which to submit his motion for summary judgment on the conditions claim but never filed a motion. (Dkt. 78.) Defendant Ruiz was never served, and the unexecuted USM-285 form indicates that there is no Ruiz employed at Stateville. (Dkt. 17.) Neither Rainford nor Ruiz participated in the pending motions.

11

must comply with the procedures and deadlines established by the correctional facility's policies. *Crouch*, 27 F.4th at 1320, *Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016). Because failure to exhaust is an affirmative defense, the burden is on the defendant to prove that the plaintiff failed to exhaust an available administrative remedy. *Crouch*, 27 F. 4th at 1320; *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020).

The record indicates that Plaintiff filed a single grievance regarding the ongoing problems with his ear on September 5, 2021. Plaintiff had already sought treatment on July 22, 2021, from Defendants Aguinaldo and Yenkong on August 19, 2021, when he filed the grievance. Defendant Bruckner does not argue that Plaintiff failed to complete the administrative process with respect to the grievance, but that it was submitted before her one meeting with Plaintiff at which she provided him with treatment on December 22, 2021.

In *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013), the court held that a prisoner's grievance regarding a continuing adverse living condition reached both forwards and backwards to exhaust the entirety of his claim. Prisoners need not file multiple grievances when they are complaining about ongoing prison policies; rather a grievance may be sufficient when it provides the authorities with notice and a chance to correct the violation. *Id.*; *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Because Plaintiff clearly grieved his ongoing medical issue in the September 5, 2021, grievance, the Court finds Defendant Bruckner has failed to meet her burden to prove the failure to exhaust administrative remedies.

### B. Deliberate Indifference

The Eighth Amendment right to be free from cruel and unusual punishment prohibits state officials and medical personnel from acting with deliberate indifference to an inmate's serious medical needs. *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). Deliberate indifference claims contain both an objective and a subjective component: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Defendants argue that Plaintiff's injury did not constitute an objectively serious medical condition. But Plaintiff received repeated and ongoing care from medical personnel for the complaints about his ear. "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). A condition is also objectively serious if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citation omitted). Because Plaintiff's injury was the subject of ongoing treatment, including examinations, prescriptions for medication, and ultimately a procedure (flushing) to clear debris from the ear canal, defendants are not entitled to judgment as a matter of law on the issue of whether Plaintiff's injury qualifies as a serious medical condition.

13

For the subjective element, Plaintiff must show that medical personnel acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 105. Deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. The official accordingly must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*. "The requirement of subjective awareness stems from the Eighth Amendment's prohibition of cruel and unusual punishment; 'an inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain."' *Zaya v. Sood*, 836 F.3d 800, 804-05 (7th Cir. 2016) (emphases in original) (*quoting Estelle*, 429 U.S. at 105).

Claims of negligence (even gross negligence), medical malpractice, or a patient's disagreement with a prescribed course of treatment are insufficient to meet this standard. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) ("Deliberate indifference requires more than evidence of negligence or medical malpractice.") (citations omitted); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Inmates "are not entitled to receive 'unqualified access to healthcare.'" *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "To survive summary judgment," an inmate "need[s] to present evidence sufficient to show that [a medical professional's] decision was 'so far afield of accepted professional standards as to raise the inference that it

14

was not actually based on a medical judgment.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citation omitted).

Plaintiff believed an insect crawled into his ear, and he sought treatment in July of 2021. Plaintiff saw Aguinaldo on July 22, 2021. Aguinaldo examined Plaintiff's ear, and found no evidence of an insect, but that Plaintiff had waxy buildup in his ear canal. Aguinaldo prescribed Debrox to help clean the ear canal and dissolve the wax accumulated there. He ordered that Plaintiff's ear be flushed after completing five days of the prescribed Debrox. At Stateville, nurses are responsible for flushing inmates' ears when required. There is no evidence in the record indicating that Aguinaldo had notice that Plaintiff's ear was not flushed after he completed his course of Debrox. Plaintiff was examined by Defendant Yenkong on August 19, 2021. Yenkong determined that he still had wax build-up in his ear canal and told Plaintiff to continue using the Debrox, previously prescribed, and reaffirmed the fact that Plaintiff should have his ear flushed. This was the one instance Defendant Yenkong provided treatment for Plaintiff and the record is devoid of evidence indicating Yenkong had knowledge that Plaintiff's ear was not flushed, per his instructions. Plaintiff saw medical personnel again on October 1, 2021, and November 25, 2021, and, while making other medical complaints, did not raise the issue of his ear not yet being flushed. Plaintiff saw Defendant Bruckner on December 22, 2021. She examined his ear, found wax in the ear canal, but no foreign object or insect, and flushed his ear.

15

In light of the totality of care Plaintiff received, no reasonable factfinder could conclude that Plaintiff suffered deliberate indifference at the hands of Defendants Aguinaldo, Yenkong, or Bruckner. The court examines the totality of the medical care provided, and even if there were any isolated incidents of delay in treatment (which is not supported by the record) it does not rise to the level of deliberate indifference. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-1375 (7th Cir. 1997). From the time when Plaintiff was treated by Aguinaldo and when his ear was flushed by Bruckner, he repeatedly saw medical personnel, received ongoing care (including examinations of his ear), and received medication designed to clear the accumulated ear wax.

No evidence suggests that either Aguinaldo's or Yenkong's treatment was outside the standard of care. While Plaintiff argues in his response that Defendants Aguinaldo and Yenkong did not make sure his ear was flushed, there is no evidence that Aguinaldo or Yenkong had knowledge of any delay in Plaintiff having his ear flushed. As to Bruckner, she gave Plaintiff the treatment he was seeking when she flushed his ear on December 22, 2021.

Plaintiff has not met his burden to marshal evidence that defendants' care was devoid of medical judgment. *See Clark v. Wexford Health Sources, Inc.*, No. 19-3181, 2020 WL 6305975, at *2 (7th Cir. Oct. 28, 2020) (noting decisions based on medical judgment are not deliberately indifferent); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (same); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016) (affirming grant of doctor's motion for summary judgment when

16

plaintiff did not "have *any* expert testimony indicating that [the doctor's] infection diagnosis and concomitant treatment plan departed from accepted medical practice, much less *substantially* so") (emphasis in original).

Additionally, Plaintiff has failed to establish that any delay in treatment is the cause of his alleged hearing loss. "'A delay in the provision of medical treatment for painful conditions . . . can support a deliberate indifference claim.'" *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009) (quoting *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). But to prevail on such a claim, a plaintiff must "introduce[] verifying medical evidence that shows his condition worsened because of the delay." *Knight*, 590 F.3d at 466; *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007) (a plaintiff must "offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm"). Plaintiff submits no such evidence here. Accordingly, the Court finds that Defendants Aguinaldo, Yenkong, and Bruckner are entitled to summary judgment, and their motions are granted.

## IV. Conclusion

The motions for summary judgment [69] [74] are granted. Because plaintiff's conditions of confinement claim remains pending, final judgment will not yet be entered, but the Clerk shall terminate Aguinaldo, Yenkong, and Bruckner as defendants in the caption.

By separate order, the court will schedule a telephone conference with the remaining parties.

ENTER:

Date: February 27, 2025

      /s/ Manish S. Shah
Manish S. Shah
United States District Judge